LEWES SAND COMPANY, a corporation
of the State of Delaware,

*vs.*

"COMMISSIONERS OF LEWES," a municipal corporation of
the State of Delaware, LOUIS R. GRAVES
and HENRY G. GRAVES.

*Sussex, April* 14, 1937.

*Robert G. Houston* and *James M. Tunnell, Sr.,* for complainant.

*Caleb R. Layton, 3d,* for defendants.

THE CHANCELLOR: The complainant seeks to enjoin the Commissioners of Lewes from granting to the defendants, Louis and Henry Graves, a lease of a portion of the

Sand Hill located on the "Common or Cape" at Lewes, Delaware, with he privilege of taking sand therefrom for sale, and to enjoin the defendants, Graves, from removing and transporting sand therefrom.

The complainant claims to have an exclusive right, duly granted to it from the Commissioners, to take and remove sand from the public lands which are under the jurisdiction of the town. It is in the business of selling sand for construction and other purposes. It alleges that its business will be injured to a substantial extent if the lease with its privilege of removing sand is granted by the Commissioners to the two individual defendants as proposed.

The case turns on whether the right which the complainant possesses to remove sand is an exclusive one. It will be assumed, without deciding, that the Commissioners had the power to grant such an exclusive right as the complainant alleges was granted to it.

But even assuming the power, the defendants deny that the Commissioners ever exercised it. They admit that the complainant has the right to take sand from the Sand Hill, but deny that the right is an exclusive one.

The exclusive feature for which the complainant contends is based solely on a resolution of the Commissioners adopted on April 11, 1925. The resolution was as follows:

"That the Lewes Sand Company be granted an exclusive franchise for a period of twenty years with privilege of removal—to sell sand and gravel from all public lands which are vested in the Town of Lewes, upon approval of Attorney."

At the time this resolution was passed, Lewes Sand Company, the complainant, was already taking and selling sand from a portion of the public land vested in the town. It was doing so by virtue of its rights as successor in interest to William C. Lofland who on March 7, 1917, was granted a twenty year lease by the town of a portion of the

public land, with a right as lessee to remove and sell sand. Lofland's right was not an exclusive one.

It is suggested that the resolution of April 11, 1925, was really intended as an amendment to the Lofland lease which by then had been acquired by the complainant. I do not see how the resolution can be read into the Lofland lease as a supplementary clause thereof. It makes no reference to the lease. If the resolution was intended as an amendment of the Lofland lease, it went much farther in its amending effect than to confer the character of exclusiveness upon the existing right, as is claimed was its purpose. It enlarged the term. Under the Lofland lease, the term ended on March 7, 1937, with privilege of renewal. Under the resolution the term was for twenty years from the resolution's date, viz., from April 11, 1925, with like privilege of renewal. Furthermore the Lofland lease was limited in area. The resolution embraced all of the public lands.

But the resolution contained a clause which shows quite clearly that it was not intended as a definite expression of the Commissioners' intent that an exclusive right was immediately conferred. I refer to the clause—"upon approval of Attorney." There is no showing that a contract between the town and the complainant was entered into and only some matter of form, or other question not essential to the contract's existence, was to be referred to an attorney for approval.

The resolution is not to be considered as amendatory of the Lofland lease. It is rather to be thought of as addressed to the question of whether as an original proposition a new lease, or as the Commissioners called it a franchise, should be granted to the complainant. So considered, it appears to have been a unilateral act on the part of the Commissioners, expressing a present favorable, though tentative, view that an exclusive right should be granted after conference with and approval by their attorney.

The Commissioners, evidently upon further consideration of the matter, altered their tentative view and concluded that the resolution should not be acted upon without further and more mature deliberation. On May 4, 1925, less than a month after the adoption of the resolution, they duly declared it rescinded. Then, with some inconsistency to be sure, after rescinding the resolution, they proceeded to amend it by forbidding the Lewes Sand Company from taking sand or gravel from the land above high water mark, and appointed a committee "to confer with their attorney concerning a franchise to Lewes Sand Company."

The proceedings in May, 1925, are such as to confirm the view that the resolution of April 11, 1925, was never intended to be other than a step in the direction of a possible final grant which might or might not be made.

The conduct of the parties since then tends strongly to confirm this view. In 1929, before the Lofland lease had expired, the town entered into another formal lease granting the right to the complainant to take sand from a designated portion of the public lands, and elaborating in detail the terms and conditions under which the right was to be enjoyed. In this lease the right did not extend to all the public lands. The premises were narrowed by appropriate description. The term was for twenty-five years. The right was not conferred as an exclusive one. If an exclusive right had been intended to be conferred by the resolution of April 11, 1925, I do not see how the fact can be reconciled with the lease of 1929.

The burden is of course on the complainant to show that its right is an exclusive one. A right of that character must be plainly shown. It is in the nature of a right in restraint of trade and of alienation. The complainant has not sustained the burden resting upon it.

The preliminary injunction should be refused and the rule discharged.